<u>**NOT FOR PUBLICATION**</u>

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| RAFAEL OSCAR MARTINEZ DEL VALLE, | Civil Action No. 13-24 |
| Plaintiff, | **OPINION** |
| v. | |
| OFFICEMAX NORTH AMERICA, INC., | January 14, 2015 |
| Defendant. | |
| | |
| RAUL SERRANO, IDONNA RICHARDSON, CHELSEA BARON, ZEBBIESHA CALLWOOD, YVONNE CARTY, KURTNEY CHRISTOPHER TODMAN, MARLITA HICKSON-SMITH, & JOANNE JAMES, | Civil Action No. 13-34 |
| Plaintiffs, | |
| V. | |
| OFFICEMAX NORTH AMERICA, INC., | |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court are nine separate Motions for Summary Judgment filed by Defendant OfficeMax North America, Inc. ("Defendant" or "OfficeMax") against Plaintiffs Rafael Oscar Martinez Del Valle ("Martinez"), Raul Serrano ("Serrano"), Idonna Richardson ("Richardson"), Chelsea Baron ("Baron"), Zebbiesha Callwood ("Callwood"), Yvonne Carty ("Carty"), Kurtney

Christopher Todman ("Todman"), Marlita Hickson-Smith ("Hickson-Smith"), Joanne James ("James") (collectively, "Plaintiffs") pursuant to Federal Rule of Civil Procedure 56.

This Court has jurisdiction pursuant to 28 U.S.C § 1332.  Venue is proper pursuant to 28 U.S.C. § 1391.  This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons set forth below, Defendant's Motions are **GRANTED** in part and **DENIED** in part, such that summary judgment is granted with respect to claims regarding breach of contract, violation of the implied covenant of good faith and fair dealing, defamation *per se*, negligent misrepresentation, intentional infliction of emotional distress, and Virgin Islands Fair Labor Standards Act, 24 V.I.C. § 1 *et seq.* ("VIFLSA"), and denied with respect to the claims of wrongful termination under the Virgin Islands Wrongful Discharge Act ("WDA").

## I.     FACTUAL HISTORY AND PROCEDURAL BACKGROUND

Plaintiffs Martinez, Serrano, Baron, Callwood, Richardson, and Todman are former employees of Defendant, OfficeMax, who commenced this action after Defendant terminated their employment on September 12, 2012.  (Martinez Am. Compl. ¶ 35; Serrano Sec. Am. Compl. ¶¶ 52-57.)[1]  Plaintiffs Carty and Hickson-Smith commenced this action after Defendant terminated their employment on December 13, 2012. (Serrano Sec. Am. Compl. ¶¶ 59-60.)  Plaintiff James commenced this action after Defendant terminated her employment on December 27, 2012. (Def.'s Statement of Facts ¶ 162.)  Plaintiffs were employees in Defendant OfficeMax's store in St. Thomas.  (Def.'s Statement of Facts ¶ 4.)  Defendant is a wholly owned subsidiary of OfficeDepot, Inc. (*Id.* at ¶ 2.)

---

[1] The Serrano Second Amended Complaint includes the following Plaintiffs: Serrano, Baron, Callwood, Richardson, Todman, Carty, Hickson-Smith, and James.

On August 21, 2012, one of Defendant's marketing executives discovered "unusual redemption activity" of an intrusion coupon released on July 9, 2012. (*Id.* at ¶ 68.) An intrusion coupon is a coupon distributed for use only in approved OfficeMax locations where a new competitor has entered the area. (*Id.*) Although the OfficeMax in St. Thomas was not in an area where a new direct competitor appeared, the store processed 1,064 of the 2,919 intrusion coupon redemptions - far more than any other store authorized to redeem the coupons. (*Id.* at ¶ 69.) Alberto Rovira ("Rovira"), the District's Loss Prevention and Safety Manager, was tasked to investigate the unauthorized use of the intrusion coupon. (*Id.* at ¶ 71.) Rafael Flores ("Flores") is the District Manager of District 79, which covers the Virgin Islands and Puerto Rico. (Pls.' Consolidated Statement of Facts ¶2.) Only the District Manager has authority to authorize the use of the intrusion coupon. (Pls.' Consolidated Statement of Facts ¶50.)

In Rovira's investigation, he found that employees at the St. Thomas store had been violating company policy by combining their employee discount with either the intrusion coupon or other discounts and coupons. (*Id.* at ¶ 72-73.) After this investigation, on September 12, 2012, Defendant terminated the employment of six employees: Martinez, Serrano, Baron, Callwood, and Todman. (*Id.* at ¶ 77.) As a result of a follow-up investigation, Defendant terminated Carty's and Hickson-Smith's employment on December 13, 2012, and terminated James' employment on December 27, 2012. (*Id.* at ¶ 162.)

Defendant maintains an employee handbook, known as the "OfficeMax Associate Guidelines" (hereafter "Handbook"), which sets out "guidelines which are subject to the company's interpretation." (*Id.* at ¶ 35.) Among the guidelines in the Handbook, the following policy is set out on the first page of the Handbook: "None of the company's plans, programs, policies, procedures, practices and/or guidelines, including those contained in this document, are

to be viewed as a contract or as making any promises or as creating any contractual rights of any kind." (*Id.* at ¶ 36.)  The Handbook also provides that "[t]his means that both the associate and OfficeMax are free to terminate the employment relationship at their discretion at any time for any reason or no reason, with or without cause or notice." (*Id.*)

Additionally, the Handbook contains a section on employee discounts stating that employees may receive either a five or a ten percent in-store discount for purchases either by the employee or the employee's "immediate family living in the same household." (*Id.* at ¶ 52.)  When employees use the employee discount for purchases, however, the Handbook prohibits combining the employee discount "with any other offer or discount (e.g., clearance items, advertised items, rebate items, coupons, or Friends & Family offers)."  (*Id.*)  Defendant refers to this as the "no combination rule." (*Id.* at ¶ 51.)  This "no combination rule" appears in various other places as well: in a Point of Sale Guide ("POS Guide") for reference for employees; in a letter mailed to employees with their employee discount card; and "on the printed terms of other discounts and promotions." (*Id.* at ¶ 58.)

Lastly, the Handbook contains an "Associate Acknowledgement of Receipt" that employees sign either at the beginning or at some time during their employment.  (*Id.* at ¶ 37.)   At various times of their employment, Plaintiffs have signed an acknowledgment stating that they read and accepted the guidelines of the Handbook.  (*Id.* at ¶ 38-49.)

*Oscar Raphael Martinez Del Valle*

Martinez was the Store Manager of the St. Thomas store during the time customers and employees redeemed the intrusion coupon.  (*Id.* at ¶ 4.)   He began working for OfficeMax on February 28, 2010. (Def.'s Consolidated Statement of Facts ¶ 6.) As the Store Manager, Martinez had a variety of duties which included: "leading, developing, and directing store associates;

ensuring that the store operated in full compliance with company policies; and evaluating financial data to maximize profitability." (Def.'s Br. Martinez at 2.)

In Rovira's investigation of the use of the intrusion coupon in the St. Thomas store, he found: that "Martinez knew the intrusion coupon had been in the store for weeks and was being used by customers and associates alike"; that he failed to verify that the coupon was legitimate; that "he also failed to ensure that the store associates were using the coupon in compliance with the instructions printed on the coupon, the policy regarding associate discounts and other OfficeMax policies." (*Id.*)  Moreover, Martinez himself violated the "no combination rule" when he purchased various items using the intrusion coupon with his employee discount.  (Def.'s Statement of Facts ¶ 18.)  On September 12, 2012, OfficeMax terminated Martinez's employment indicating the reason was for "violating company policy and failing to perform adequately the managerial responsibilities of his job." (*Id.* ¶ 20.)

*Raul Serrano*

On April 14, 2009, Defendant hired Serrano as a furniture specialist. (*Id.* ¶ 18).  Defendant later promoted Serrano to Merchandise Assistant Manager, a salaried position he held until his termination.  (Serrano's Opp'n  4.)

In his investigation, Rovira found that Serrano violated the "no combination rule."  (*Id.* at 9.)  Although Serrano claimed he was not aware that the cashier applied the intrusion coupon and the employee discount, Serrano could not recall having a "manager sign off on the receipt for his personal purchases," as company policy requires.  (*Id.*)  OfficeMax terminated Serrano's employment on September 12, 2012.  (Def.'s Statement of Facts  ¶ 89.)

*Idonna Richardson*

On October 19, 2011, Defendant hired Richardson to be a part-time associate after she signed an offer letter that stated, "[e]mployment at OfficeMax is at-will, and the terms and conditions of this offer are intended to be for your information only." (*Id.* ¶ 31-33.)

After Rovira found that Richardson violated the "no combination rule" and failed to accurately charge for services, Defendant terminated Richardson's employment on September 12, 2012. (*Id.* ¶ 132.) The total reimbursed to Defendant appears to be $1.80. (Pls.' Consolidated Statement of Facts ¶ 420.)

*Chelsea Baron*

On November 18, 2011, Defendant hired Baron after she signed a written offer of employment. (*Id.* ¶ 25.). This written offer of employment stated that "[e]mployment at OfficeMax is at-will, and the terms and conditions of this offer are intended to be for your information only." (*Id.* ¶ 24.) As a result of Rovira's investigation, Defendant terminated Baron's employment on September 12, 2012 for violating the "no combination rule". Baron's official termination notice states that she was terminated for "Operating Policy & Procedure Violation." (*Id.* ¶ 440.)

*Zebbiesha Callwood*

On October 12, 2011, after she signed an offer of employment, Defendant hired Callwood as a part-time associate. (*Id.* ¶ 27.) The letter states that "[e]mployment at OfficeMax is at-will, and the terms and conditions of this offer are intended to be for your information only." (*Id.* ¶ 27-28.)

Rovira's investigation found that Callwood repeatedly violated the "no combination rule" when she used her employee discount with the intrusion coupon. (*Id.* ¶ 118-21.) The total

reimbursed to Defendant appears to be $14.36.  (Pls.' Consolidated Statement of Facts ¶ 389.) Defendant terminated Callwood's employment on September 12, 2012. (*Id.* ¶ 123.)

*Kurtney Christopher Todman*

On July 3, 2011, Defendant hired Todman as an associate.  (*Id.* ¶ 118-21.)  Todman confirmed that he received the Handbook and "understood when he signed the acknowledgement that he was agreeing to read the Handbook at a later date." (*Id.* ¶ 139.)  On September 12, 2012, Defendant terminated Todman because Rovira's investigation found that he violated the "no combination rule."  (*Id.* ¶ 140.) The total reimbursed to Defendant appears to be $10.34.  (Pls.' Consolidated Statement of Facts ¶ 466.)

*Yvonne Carty*

On September 16, 2008, Defendant hired Carty as a sales associate, but she held the position of Merchandise Assistant Manager when Defendant terminated her employment on December 13, 2012.  (*Id.* ¶ 162.)

After the intrusion coupon investigation, Defendant tasked Rovira to investigate "thirteen (13) no-receipt return transactions approved by Carty."  (*Id.* ¶ 163.)  Rovira found that Carty violated company policy when she processed no-receipt returns under the fictitious name "Cecilia Bartley" for different customers.  (*Id.* ¶ 164.)

*Marlita Hickson-Smith*

On July 20, 2011, after she signed an offer of employment, Hickson-Smith was hired as a full-time associate.  (*Id.* ¶ 29.)  The letter states that "[e]mployment at OfficeMax is at-will, and the terms and conditions of this offer are intended to be for your information only."  (*Id.* ¶ 29-30.)

Rovira's investigation found that Hickson-Smith not only violated the "no combination rule" numerous times, but she also "approved a 'no-receipt return' transaction using the fictitious

name Cecilia Bartley." (*Id.* ¶ 175.)  On December 13, 2012, Defendant terminated Hickson-Smith's employment for violating company policy. (*Id.* ¶ 178.)

*Joanne James*

On May 30, 2011, James began working as a sales associate. (*Id.* ¶ 31.)  James received the Handbook and "signed acknowledgments that she would read it and abide by the company's policies and procedures." (*Id.* ¶ 185.)

Upon Rovira's follow-up investigation, he determined that James repeatedly violated the "no combination rule" as well as the terms of other coupons. (*Id.* ¶ 179.)  On December 27, 2012, Defendant terminated James' employment. (*Id.* ¶ 193.) James reimbursed Defendant a total of $35. (Pls.' Consolidated Statement of Facts ¶ 546.)

**Procedural History**

On March 15, 2013, Martinez filed a Complaint against Defendant, asserting claims for breach of written contract (Count I); breach of implied covenant of good faith and fair dealing (Count II); defamation (Count III), and intentional infliction of emotional distress (Count IV). (Dkt. No. 1.)  On July 26, 2013, Martinez filed an Amended Complaint, which included the same claims. (Dkt. No. 34.)  On August 9, 2013, Defendant filed an Answer to the Amended Complaint. (Dkt. No. 35.)

On April 2, 2013, Serrano, Richardson, Baron, Callwood, Carty, Todman, Hickson-Smith, and James ("Serrano Plaintiffs") filed a Complaint against Defendant for claims arising out of Defendant's termination of their employment.  On December 5, 2013, the Serrano Plaintiffs filed their First Amended Complaint. (Dkt. No. 165.)  On June 11, 2014, the Serrano Plaintiffs filed their Second Amended Complaint with the following claims: wrongful termination in violation of

the WDA (Count I);[2] breach of contract (Count II); defamation (Count III); violation of the VIFLSA (Count IV); intentional infliction of emotional distress (Count V); and negligent misrepresentation (Count VI).  (Dkt. No. 464.)  On September 25, 2014, Defendant filed its Answer to the Second Amended Complaint.  (Dkt. No. 510.)

On June 12, 2013, the Court consolidated these cases (13-0024 and 13-0034) for the purpose of discovery.  (Dkt. No. 20.)[3]

On October 20, 2014, Defendant filed the instant Motions for Summary Judgment against Plaintiffs in both cases.  (Dkt. No. 525, 529-46.)  Defendant also filed a Consolidated Statement of Facts.  (Dkt. No. 527, 547.)  Plaintiffs filed their Opposition on December 01, 2014. (Dkt. No. 579-86.)  Plaintiffs also filed their own Consolidated Statement of Facts.  (Dkt. No. 587.)

## II.   <u>LEGAL STANDARD</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The dispute is not genuine if it merely involves "some metaphysical

---

[2] Carty did not have a claim under the WDA.
[3] These cases have now also been consolidated for the purposes of trial.

doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"A fact is material only if it will affect the outcome of a lawsuit under the applicable law . . . ." *Suid v. Phoenix Fire & Marine Ins. Co.*, 26 V.I. 223, 225 (D.V.I. 1991). Once the moving party has carried its initial burden, the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (quoting Fed. R. Civ. P. 56(e)) (internal quotations omitted); *see also Skopbank v. Allen–Williams Corp.*, 39 V.I. 220, 227–28 (D.V.I.1998).

## III.   DISCUSSION

### A.   Wrongful Termination under the WDA

The WDA provides reasons for which "an employer may dismiss an employee".  4 V.I.C. § 76.  It states, in relevant part:

> (a) Unless modified by union contract, an employer may dismiss any employee:
> (1) who engages in a business which conflicts with his duties to his employer or renders him a rival of his employer;
> (2) whose insolent or offensive conduct toward a customer of the employer injures the employer's business;
> (3) whose use of intoxicants or controlled substances interferes with the proper discharge of his duties;
> (4) who [willfully] and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer; provided, however, the employer shall not bar an employee from patronizing the employer's business after the employee's working hours are completed;
> (5) who performs his work assignments in a negligent manner;
> (6) whose continuous absences from his place of employment affect the interests of his employer;
> (7) who is incompetent or inefficient, thereby impairing his usefulness to his employer;
> (8) who is dishonest; or
> (9) whose conduct is such that it leads to the refusal, reluctance or inability of other employees to work with him.

4 V.I.C. § 76; *Rajbahadoorsingh v. Chase Manhattan Bank*, 168 F. Supp. 2d 496, 503 n.7 (D.V.
I. 2001) (quoting 4 V.I.C. § 76.)  Further, subsection (c) provides that

> [a]ny employee discharged for reasons other than those stated in
> subsection (a) of this section shall be considered to have been
> wrongfully discharged; however, nothing in this section shall be
> construed as prohibiting an employer from terminating an employee
> as a result of the cessation of business operations or as a result of a
> general cutback in the work force due to economic hardship, or as a
> result of the employee's participation in concerted activity that is
> not protected by this title.

4 V.I.C. § 76; *see also Rajbahadoorsingh*, 168 F. Supp. 2d 496, 503 n. 7; *Gumbs-Heyliger v. CMW
& Associates Corp.*, No. 2012–078, 2014 WL 3360152 (D.V.I. 2014).  It is generally presumed
that the WDA "cover[s] all or almost all legitimate reasons for discharge." *St. Thomas–St. John
Hotel & Tourism Ass'n, Inc. v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 244 (3d Cir. 2000);
*Rajbahadoorsingh*, 168 F. Supp. 2d at 505.

Once a plaintiff establishes a prima facie claim, "the burden of production shifts to the
employer to articulate some legitimate, statutorily-approved reason for the plaintiff's discharge."
*Rajbahadoorsingh*, 168 F. Supp. 2d at 505 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S.
792, 802); *see also* 24 V.I.C. § 76.  The defendant employer may then provide rebuttal evidence.
*See generally Center v. Hicks*, 509 U.S. 502, 506–07 (1993); *Texas Dep't of Community Affairs v.
Burdine*, 450 U.S. 248, 255 n.9 (1981).

If the defendant employer is able to offer statutorily-approved reasons for its actions, "the
burden shifts back to the plaintiff to show, by a preponderance of the evidence, that the
[defendant's] proffered reasons are pretextual."  *Rajbahadoorsingh*, 168 F. Supp. 2d at 505.

In the instant matter, the Serrano Plaintiffs have set forth a basis for a prima facie case for
wrongful discharge and Defendant has supplied statutorily-approved reasons for Plaintiffs'
discharge.  Namely, Defendant has pointed to violations of its policies with the use of the coupons

and discounts by the discharged plaintiff employees in this suit. The reason is identified in Plaintiffs' termination papers as "Operating Policy & Procedure Violation." (*See generally* Pls.' Statement of Facts.)  Defendants argue that the Serrano Plaintiffs' terminations are supported by the following two statutorily-approved reasons: 1) willfully and intentionally disobeying a lawful and reasonable policy or order; and/or 2) performing work assignments in a negligent manner. (Def.'s Br., Serrano, 8; Def.'s Br., Richardson, 6-10; Def.'s Br., James, 6-10; Def.'s Br., Todman, 6-10; Def.'s Br., Callwood, 6-10; Def.'s Br., Hickson-Smith, 6-8; Def.'s Br., Carty, 7-9; Def.'s Br., Baron, 6-10.)

In justifying the terminations, Defendant points to the policies addressed in the Handbook,[4] POS Guide, POS Guide Update,[5] instructions on coupons[6], discount cards, and web portal.  (*Id.*) Defendant also refers to the "perks policy" information.  However, Plaintiffs argue that these reasons are pretextual and they are merely being used as "scapegoats" for Flores and the use of the intrusion coupon. (*See generally* Pls.' Opp'n Br.; *see, e.g.,* Hickson-Smith Opp. 13.)  Essentially, Plaintiffs also contend that there was no clear policy that they violated and/or that they did not voluntarily or willfully receive an improper discount.[7]  (*Id.*)  Additionally, several of the Serrano Plaintiffs indicate that a manager approved or completed their transactions involving the coupon. (*See e.g.*, Callwood Opp'n 13.)

---

[4] The Handbook section entitled "Associate Discounts" states that the associate discount "is good for in-store purchases only and cannot be combined with any other offer or discount (e.g., clearance items, advertised items, rebate items, coupons, or Friends & Family offers)."  (Defs.' Facts ¶ 185.)

[5] The POS Guide Update indicates that "Associate or immediate family members living in the same household cannot receive their discount in conjunction with a transactional coupon, Friends & Family offer, Bag Event savings or last one display . . . Perks card cannot be scanned into a transaction which includes one of these as doing so would automatically apply their Associate discount in violation of the policy." (Defs.' Facts ¶ 62.)

[6] For example, printed on the coupon was the statement "[c]annot be combined with any other coupon, associate discount. . ." (Defs.' Facts ¶ 70.)

[7] For example, Callwood claims that she did not understand the coupons or get proper training on the policy regarding them.  (Callwood Opp'n 12-13.)

There remain genuine issues of material fact regarding the actions of the parties in this matter that preclude summary judgment.  As such, this Court will deny summary judgment as to Plaintiffs' claims regarding wrongful discharge and these claims will proceed to trial for the following plaintiffs: Baron, Callwood, Richardson, Todman, Hickson-Smith, and James.

Regarding Plaintiffs Carty and Serrano, these individuals are management level employees to whom the WDA does not apply.[8]  *See St. Thomas–St. John Hotel & Tourism Ass'n. Inc.*, 357 F.3d at 304 (holding that the National Labor Relations Act preempts WDA claims asserted by managerial or supervisory employees).  Plaintiffs concede that the WDA does not apply to Carty as she was a manager.  However, Plaintiffs argue that Serrano was not an actual manager even though he held the title of Merchandise Assistant Manager (essentially a similar title and position to Carty).  (*See* Def.'s Consolidated Statement of Facts ¶¶ 17-18, 22.)  Serrano's termination notice indicated that he was let go for an "Operating Policy & Procedure Violation." (Def.'s Mot. Summ. J. Ex., 72, 73.)  To support this argument, Plaintiffs contend that Serrano did not meet the statutory definition of a "supervisor" and point to the types of tasks Serrano continued to do even after he was promoted.  (Pl.'s Opp'n Br. Serrano 4.)

According to Defendants, the position of Merchandise Assistant Manager carries the responsibility of "assisting the Store Manager and Assistant Store Manager in the day-to-day operations of the store and management of all process related to the receipt and movement of OfficeMax products and materials." (Def.'s Statement of Facts ¶ 216.)  The Merchandise Assistant Manager is given a key to the store and serves as Store Manager when no other managers are available.  (*Id.* ¶ 221-22.)  The Merchandise Assistant Manager exercises "discretion and

---

[8] Martinez did not file a WDA claim.

independent judgment" in directing the work of others and also "plays an active role in hiring, interviewing, training, and scheduling associates in their area of the store."  (Def.'s Br. Serrano 6.)

Even as presented by Plaintiffs, the nature and title of Serrano's position is very similar to Carty, who Plaintiffs concede does not have a WDA claim.  (*See* Pls.' Opp'n Brs.)  This Court finds that for the purposes of the WDA, Serrano would be considered a manager, and therefore, not covered by the WDA.

**B.      Breach of Contract and Implied Covenant of Good Faith and Fair Dealing**

"To establish a breach of contract claim, a plaintiff is required to prove that there was 1) an agreement, 2) a duty created by that agreement, 3) a breach of that duty, and 4) damages." *Davis v. Ragster*, No. 2005–155, 2008 WL 2074026, at *4 (D.V.I. 2008) (citing *Galt Capital, LLP v. Seykota*, Civil Nos. 2002–63 and 2002–134, 2007 U.S. Dist. LEXIS 92955, at *10 (D.V.I. Dec. 14, 2007)); *see also Stallworth Timber Co. v. Triad Bldg. Supply*, 968 F.Supp. 279, 282 (D.V.I. 1997). The statutory period within which a breach-of-contract action may be brought is six years. 5 V.I.C § 31(3)(A).

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205 (1981). "The duty of good faith limits the parties' ability to act unreasonably in contravention of the other party's reasonable expectations." *Pennick v. Virgin Islands Behavorial Service, Inc.*, No. 2006–0060, 2012 WL 593137, at *3 (D.V.I. 2012).  Further, to succeed with a claim for breach of the covenant of good faith and fair dealing, proof of acts amounting to "fraud or deceit on the part of the employer" is required. *Bostic v. AT&T*, 2003 U.S. Dist. LEXIS 25477, at *22 (D.V.I. Apr. 15, 2003); Alvarez, 24 V.I. at 146; Joseph, 1988 U.S. Dist. LEXIS 18465, at *4; Robinson, 1982 U.S. Dist. LEXIS 18353, at *9; *see also Smith v. V.I. Port Auth.*, 2005 WL 15459, at *4 (D.V.I. Jan. 2,

14

2005)(noting that "[i]nternal personnel rules can be construed as an implied contract, if there is evidence that the employer intended to be bound by the requirements set forth in those rules"); *Smith v. V.I. Water & Power Auth.*, 2008 U.S. Dist. LEXIS 95852 (D.V.I. Nov. 24, 2008) ("The implied covenant of good faith and fair dealing applies to at-will employment contracts in the Virgin Islands.").

Here, Plaintiffs argue that a contract existed largely based on the employee manual, the Handbook. (*See* Pls.' Opp'n Brs.)  Several associates claim that they were authorized by a manager to use their discount codes or coupons, and never looked at the policies limiting the combination of coupons and discounts or were not familiar with them. (*Id.*)  For example, James contends that she did not ring up her own transactions. (James Opp. 13.)  Todman also claims that a manager reviewed his receipts and transactions. (Todman Opp. 13.)  Additionally, Martinez alleges that OfficeMax violated the terms of his October 31, 2011 promotional offer letter.[9]  (*See* Consolidated Statement of Facts ¶¶ 8-10.)

There are some instances where an employment manual or handbook may be considered a binding contract. *Chapman v. Cornwall*, 58 V.I. 431, 2013 WL 2145092, at *4 & n.8 (V.I. May 15, 2013) (citing *Garcia v. Matthews*, 66 Fed. Appx. 339, 342 (3d Cir. 2003) (an employment manual may be considered a contract where "a reasonable person would conclude that the employer intended to be bound"); *Garnett v. Legislature of the Virgin Islands*, 2014 WL 902502, at *6 (D.V.I. Mar. 7, 2014) ("[E]mployer violations of their own handbooks or internal person[nel] rules are not actionable, absent some indication that those rules were intended to create a contract with employees.") (internal citations omitted)).

Here, as previously noted, the Handbook includes the following language:

---

[9] Martinez's First Amended Complaint Count I specifically refers to breach of the "written contract", even though Count II notes that the "term of Plaintiff's employment was at will." (Martinez Am. Comp. ¶ 49.)

> None of the company's plans, programs, policies, procedures,
> practices and/or guidelines, including those contained in this
> document, are to be viewed as a contract or as making any promises
> or as creating any contractual rights of any kind.  This means that
> both the associate and OfficeMax are free to terminate the
> employment relationship at their discretion at any time for any
> reason or no reason, with our without cause or notice.

(Defs.' Statements of Facts ¶¶ 33-36.)   Plaintiffs, however, argue that "[e]very employment relationship is contractual." (Baron Opp'n Br. 17 (citing *Williams v. V.I. Hous. Auth.*, 2007 U.S. Dist. LEXIS 98197 (D.V.I. Oct. 24, 2007)).

In this matter, it has not been shown that a written or implied contract existed for which Plaintiffs can base their claims for breach of contract and breach of the covenant of good faith and fair dealing.  The Handbook clearly states that it is not intended to be a contract.  Further, the Associate Acknowledgement of Receipt that Plaintiffs signed acknowledges that they received and read the Associate Guidelines and policies from the Handbook, including several disclaimers.[10]

Several cases in the Virgin Islands have discussed whether there is an implied contract, and whether that implied contract between an at-will employee and his employer would include an implied covenant of good faith and fair dealing.  *See generally, Williams v. V.I. Hous. Auth.*, No. 2005-0009, 2007 WL 6027814 (D.V.I. 2007); *Gov't of the Virgin Islands v. Davis*, No. 1996-097, 2001 WL 1571052 (D.V.I. 2001); *Peterson v. First Fed. Sav. & Loan Ass'n*, 617 F. Supp. 1039, 1042 (D.V.I. 1985).  However, such a claim for breach of the implied covenant of good faith and fair dealing requires plaintiffs to demonstrate fraud and deceit.  *Peterson*, 617 F. Supp. at 1042.

---

[10] For example, Richardson and Baron signed a statement admitting they knew they could not combine the employee discount with other coupons.  (Def.'s Stat. of Facts ¶¶ 107, 133.)  Richardson has also previously "signed an Associate Acknowledgement of Receipt indicating that she had received and agreed to read the Handbook" as did Todman.  (*Id.* ¶¶ 47, 139; *see also* Def.'s Statement of Facts ¶ 37.)

This Court does not find that there is an implied contract in this matter, and even assuming *arguendo* that an implied contract did exist, deceit and misrepresentation have not been sufficiently pled in Plaintiffs' Complaints to sustain a claim for breach of the implied covenant of good faith and fair dealing.  In Martinez's Amended Complaint, he merely includes the following conclusory statement: "Office Max through deceit and misrepresentation fictitiously created the grounds to terminate the Plaintiff's employment and violated its duty of good faith and fair dealing." (Martinez's Am. Comp. ¶ 50.)  In the Second Amended Complaint for the Serrano Plaintiffs, within the claim for breach of contract, Plaintiffs state the following: "[m]oreover, in the performance or enforcement of the contract, Office Max engaged in conduct that was deceitful and made these representations and inconsistent [statements] with the reasonable expectations of the parties." (Pls.' Sec. Am. Compl.  ¶ 123.)  These statements merely recite elements needed to support the claim.  After significant discovery, Plaintiffs were left with only a claim for negligent misrepresentation, as will be discussed, and subsequent attempts to add claims were unsuccessful.[11]

As such, this Court will grant Defendant's Motion for Summary Judgment as to the claims for breach of contract and breach of the implied covenant of good faith and fair dealing as to all Plaintiffs.

---

[11] Although the motions filed in this matter are for summary judgment, this Court notes that claims for and related to breach of contract are not clearly pled in Plaintiffs' Complaints.  For the purpose of evaluating the adequacy of the pleadings, this Court reviews the facts in the light most favorable to Plaintiffs; however, little support is evident for the elements of fraud, deceit, and misrepresentation to demonstrate breach of the implied covenant of good faith and fair dealing.  The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief."  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

C.       **Defamation Per Se**

Under Virgin Islands law, a claim for defamation requires that a plaintiff plead facts which establish four elements: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."[12] *Chapman v. Cornwall*, 2013 WL 2145092, at *6 (V.I. May 15, 2013) (citing *Kendall v. Daily News Publ'g Co.*, 55 V.I. 781, 787 (V.I. 2011) (quoting Rest. (2d) of Torts § 558), *aff'd*, 716 F.3d 82 (3d Cir. 2013)).   The plaintiff must specifically identify the alleged the defamatory statements, by whom and to whom the statements were made, and when the statements were made.   *See Smith v. V.I. Auth.*, 2010 WL 1381222, *16; *Manns v. The Leather Shop Inc.*, 960 F. Supp. 925, 928–29 (D.V.I. 1997) (dismissing a defamation claim that lacked "any hint" concerning what the allegedly defamatory statements contained or when the statements were made).

However, it is a complete defense to defamation if the alleged defamatory statement is true. *Bethea v. Merchants Commercial Bank*, 2014 WL 4413045, *21 (D.V.I. Sep. 8, 2014). Additionally, a plaintiff cannot succeed on a defamation claim where the alleged defamatory statements are subject to an absolute or conditional privilege.  *Sprauve v. CBI Acquisitions, LLC*, 2010 WL 3463308, *11-12 (D.V.I. Sep. 2, 2010).   An absolute privilege applies to "communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which [a plaintiff] participates, if the matter has some relation to the proceeding."   *Id.*   A conditional privilege applies "if the circumstances

---

[12] The plaintiff bears the burden of proof in "showing the alleged statements are either defamatory per se, which does not require proof of special damages, or showing the publication of defamatory statements caused her special harm."  *Smith v. Virgin Islands Port Authority*, 2010 WL 1381222, *16 (D.V.I. Mar. 31, 2010).

induce a correct or reasonable belief that (a) there is information that affects a sufficiently important public interest, and (b) the public interest requires the communication of the defamatory matter to a public officer or a private citizen who is authorized or privileged to take action if the defamatory matter is true." *Id.* at *12. If an employer is under a "legal obligation to provide employment information to a government agency . . . any information provided in fulfillment of such obligation is subject to the conditional privilege." *Van Hove v. Rock Resorts, Inc.*, 1983 WL 890028, at *2 (D.V.I. Apr. 6, 1983).

In the instant matter, Martinez argues that OfficeMax defamed him because when he was applying for benefits at the Virgin Islands Department of Labor ("VIDOL"), all VIDOL employees learned that Martinez was terminated due to fraud. (Def.'s Statement of Facts ¶ 208.) Martinez also contends that OfficeMax made a defamatory statement to the press at the *St. Thomas Source* that there had been "non-layoff turnover" at the St. Thomas store where Martinez was based. In his opposition, Martinez adds that OfficeMax depicted him in a false light and invaded his privacy by insinuating that he was incompetent and caused OfficeMax a $14,000 loss.[13] (Martinez Opp. 22.) Martinez further contends that District Manager Flores visited the St. Thomas OfficeMax, where Flores told employees that Martinez had been fired. (*Id.*)

OfficeMax argues that Martinez is unable to prove defamation because any of its statements were conditionally privileged, or in the alternative, the statements were actually true. (Def.'s Br., Martinez 13.) OfficeMax further contends that Martinez is unable to rely on the testimony of employees Shakira Mactavious ("Mactavious") or Davern Casimir ("Casimir"), as

---

[13] Martinez does not have a pending false light or invasion of privacy claim, as this Court adopted Magistrate Judge Miller's June 11, 2014 Report and Recommendation, denying Martinez's Motion to Amend his Complaint to add in these claims. (3:13-cv-24, Dkt. No. 464, 472, 520.)

they were unable to specify who made any statements relating to Martinez's discharge, or when such statements were made.[14]  (Def.'s Reply, Martinez 5-7.)

This Court finds that Martinez's defamation claim is without merit.  First, Martinez is unable to point to any false representations made by OfficeMax.  (*See generally,* Martinez Opp.) Second, he fails to specifically identify the alleged defamatory statements, by whom and to whom the statements were made, or when the statements were made.  *(Id.); see Smith*, 2010 WL 1381222. Third, even if a defamatory statement had been made by OfficeMax to VIDOL, such a statement would be protected as conditionally privileged, because OfficeMax would have an obligation to report Martinez's actions to VIDOL, a government agency that was considering Martinez for benefits.  *See Van Hove v. Rock Resorts, Inc.*, 1983 WL 890028, at *2.

In support of their defamation claim, the Serrano Plaintiffs primarily rely on the statement that OfficeMax made to the press at the *St. Thomas Source* that there had been "non-layoff turnover."  (Serrano Opp. 18; Richardson Opp. 19; James Opp. 18; Todman Opp. 16; Callwood Opp. 15; Hickson-Smith Opp. 20; Carty Opp. 14; Baron Opp. 15.)   This statement is not defamatory because it does not specifically identify any of the Plaintiffs.  *Kendall v. Daily News Publ'g Co.*, 2010 WL 2218633, *5 (V.I. Super. Ct. May 27, 2010) (internal quotation marks omitted) ("[T]o be actionable a communication must be a misstatement of fact capable of defamatory meaning that is of and concerning the plaintiff . . . When considering a publication's alleged meaning, the Court must evaluate the effect [the publication] is fairly calculated to produce, and the impression it would naturally engender, in the minds of average persons [to] whom it is intended to circulate") (citing *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 971 (3d Cir. 1985); *Tucker*

---

[14] According to Plaintiffs, Flores told staff that the Serrano Plaintiffs had been fired.  (Pls.' Consolidated Statement of Facts ¶ 607.)  Specifically, Mactavious and Casimir, current OfficeMax employees, heard that Plaintiffs were fired over the use of the intrusion coupons. (Pls.' Consolidated Statement of Facts ¶¶ 21, 23.)

*v. Fischbein*, 237 F.3d 275, 282 (3d Cir.2001)).   Further, given that the Serrano Plaintiffs were actually fired for cause, this Court finds that OfficeMax's statement is true on its face, which serves as a complete defense to defamation.  *Bethea v. Merchants Commercial Bank*, 2014 WL 4413045, *21.[15]

Similarly, Flores' alleged statement to OfficeMax employees that the Plaintiffs were discharged was also true.  Moreover, Plaintiffs are unable to rely on the testimony of employees Shakira MacTavious or Davern Casimir, who were unable to specify who made any statements relating to Plaintiffs' discharge, or when such statements were made.  (*See generally,* Serrano Pls.' Opp.)  Although Plaintiffs claim that either OfficeMax or Flores stated that Plaintiffs were terminated due to "internal theft," they fail to specify to whom, or when, any statements were made in relation to that accusation.  (*See id.); see also Smith*, 2010 WL 1381222.

Additionally, the *St. Thomas Source* article, published on October 6, 2012, could not have been referring to Plaintiff James or Plaintiff Hickson-Smith, who were terminated after the publication, on December 27, 2012 and December 13, 2012, respectively.  (Def.'s Statement of Facts ¶ 206; Pl.'s Counterstatement of Facts ¶¶ 476, 552.)

Therefore, this Court grants Defendant's Motion for Summary Judgment as to the defamation claim.

### D.     Negligent Misrepresentation[16]

To prevail on a claim for negligent misrepresentation, a plaintiff must demonstrate that: (1) defendant made a false representation; (2) defendant should have known that the representation

---

[15] The Serrano Plaintiffs argue that the theory of "compelled self-publication" bolsters their defamation claim because they were compelled to disclose the content of the defamatory statement to third parties.  However, Plaintiffs cannot rely on this theory because it is not recognized in the Virgin Islands.  *Bethea v. Merchants Commercial Bank*, 2014 WL 4413045, *22.

[16] Serrano Plaintiffs did not brief opposing arguments to Defendant's Motion for Summary Judgment on this claim.

was false; (3) plaintiff justifiably relied on the representation; (4) plaintiff suffered a pecuniary loss as a result of justifiably relying on the information; and (5) defendant did not exercise reasonable care or competence in obtaining or communicating the information contained in the misrepresentation. *Smith v. V.I. Port Auth.*, 2010 WL 1381222, at *7-8; *In re Tutu Water Wells Containment Litig.*, 32 F. Supp. 2d 800, 807 (D.V.I. 1998) (citing Rest. (2d) of Torts § 552); *Addie v. Kjaer*, 2009 WL 453352, at *2 (D.V.I. Feb. 23, 2009).  Negligent misrepresentation "requires an express representation which is false or misleading at the time it is made." *Smith v. V.I. Port Auth.*, 2010 WL 1381222, *8.  "That is, an alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition." *Id.*

In their Second Amended Complaint, the Serrano Plaintiffs allege negligent misrepresentation by OfficeMax[17] because OfficeMax indicated that Plaintiffs would be allowed to retain their employment in exchange for restitution.  (Second Am. Compl. ¶¶ 153-160.) They additionally claim that OfficeMax promised not to fire them.  (*Id.*)  According to OfficeMax, the Serrano Plaintiffs admitted that Rovira did not make any threats or promises regarding Plaintiffs' future employment, and that even if he had, such statements concerned future intention for which there is no cause of action for negligent misrepresentation.  (Def.'s Br., Serrano 27-28; Def.'s Br., Richardson 21-22; Def.'s Br., James 21-22; Def.'s Br. Todman 21-22; Def.'s Br., Callwood 21-22; Def.'s Br., Hickson-Smith 19-20; Def.'s Br., Carty 20-21; Def.'s Br., Baron 21-22); *Smith v. V.I. Port Auth.*, 2010 WL 1381222, at *8.

This Court finds that a future promise of employment, like the one at issue here, does not rise to the level of negligent misrepresentation. *See Smith v. Virgin Islands Port Authority*, 2010

---

[17] Martinez does not have a pending negligent misrepresentation claim, as this Court adopted Magistrate Judge Miller's June 11, 2014 Report and Recommendation, denying Martinez's Motion to Amend his Complaint to add in this claim. For the same reasons, Martinez does not have a pending intentional misrepresentation claim. (3:13-cv-24, Dkt. No. 464, 472, 520.)

WL 1381222, *8.   Even assuming, *arguendo*, that OfficeMax's alleged promise of future employment was a false representation that could fall within a claim for negligent misrepresentation, Serrano Plaintiffs have not demonstrated justifiable reliance or that damages were incurred as a result of any reliance on the alleged promise.   In light of this Court's finding that Plaintiffs could not maintain a claim for breach of contract, any reliance on Plaintiffs' part is not justifiable.   Accordingly, summary judgment is granted as to the claim for negligent misrepresentation.

### E.   Intentional Infliction of Emotional Distress

To succeed on a claim for intentional infliction of emotional distress, a plaintiff must show that a defendant's "extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another."   *James-Frederick v. Frenchman's Reef and Morning Star Marriott Beach Resort*, 2013 WL 3992938, *6 (D.V.I. Aug. 1, 2013); *Manns v. Leather Shop Inc.*, 960 F. Supp. 925, 930 (D.V.I. 1997); Rest. (2d) of Torts § 46.   The defendant's alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."   Rest. (2d) of Torts § 46, cmt. d.   "When there is no physical injury, however, the conduct is expected to be 'sufficiently extreme and outrageous . . . [to] guarantee that the claim is genuine.'"   *Heywood v. Cruzan Motors, Inc.*, 792 F.2d 367, 372 (3d Cir. 1986) (internal citations omitted).

The Third Circuit has held that, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress."   *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 940 (3d Cir. 1997).   Similarly, Virgin Islands courts have held that, "while [a] plaintiff may [ ] experience[ ] some emotional distress, such feelings are not unusual after an

individual is terminated from his employment and are not so severe that a reasonable person would not be expected to endure them." *Crow v. All American Holding Corp.*, 1988 U.S. Dist. LEXIS 18449 (D.V.I. Jan. 6, 1988)

This Court finds that Plaintiffs fail to provide sufficient factual allegations in support of their claim for intentional infliction of emotional distress. Other than asserting conclusory statements, Plaintiffs do not relay facts relating to OfficeMax's alleged extreme and outrageous conduct that went beyond all possible bounds of decency. *See* Rest. (2d) of Torts § 46, cmt. d. Moreover, Martinez and the Serrano Plaintiffs have all conceded in their opposition papers that summary judgment is warranted as to intentional infliction of emotional distress "[b]ased on recent jurisprudence on the issue of [the] lack of viability" of this claim. (Martinez Opp. 1 n.1; Serrano Pls.' Opp. 1. n.1.) As such, this Court grants summary judgment as to the claim for intentional infliction of emotional distress.

### F.     VI FLSA Claims

The Third Circuit has recognized that the VIFLSA resembles the federal Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq. McDonald v. Davis*, 2009 WL 1405857, *2 (D.V.I. 2009) (citing *Amalgamated Workers Union v. Hess Oil Virgin Islands Corp.*, 478 F.2d 540, 545 (3d Cir. 1973) ("The [federal] Fair Labor Standards Act . . . is analogous to the Virgin Islands statute." (footnote omitted)). The statute provides overtime must be paid to non-exempt employees as follows:

> (a) No employer shall employ any of his employees for (1) more than 5 consecutive days, or (2) longer than a total of 40 hours in a workweek, unless otherwise provided for pursuant to section 6(e) of this title, or (3) for a workday longer than 8 hours, unless such employee receives compensation for his employment (1) on a sixth and/or a seventh consecutive day of work, or (2) in excess of 40 hours in a workweek, or (3) in excess of 8 hours in a workday, whichever excess is calculated to give the employee the greatest

compensation, at a rate not less than 1 1/2 times the regular rate at which he is employed.

24 V.I.C. § 20(a).

The appropriate Plaintiffs have been compensated for overtime and Plaintiffs have not set forth a basis for any additional overtime pay or overtime calculation for Serrano.  Plaintiffs include the following footnote in the opposition briefs for Plaintiffs Baron, Callwood, Richardson, Carty, Hickson-Smith, James and Todman:

> . . . Plaintiff will not contest summary judgment as to Plaintiff's overtime claims in light of Defendant OfficeMax's admission that it failed to pay overtime and it finally providing Plaintiff with evidence as to how it calculated what overtime it owed Plaintiff as a result of the Department of Labor investigation. [ ] Plaintiff notes that Stoke[s] was never identified as a witness with knowledge and in fact Defendant refused during discovery to disclose how they calculated what overtime was due contending that it was privileged information because its legal department undertook the task. [Mot. for Sanc., ECF Doc. 303 in 13-34]. This Court denied Plaintiffs' Motion. [ECF Doc. 367] Because discovery has concluded and Plaintiff has no opportunity to challenge the late filed affidavit, Plaintiff will save this Court time by not challenging the VIFLSA claim. However, this does NOT apply to the VIFLSA claims of Plaintiff Raul Serrano.

(Pl.'s Opp. 1 n.1.) Plaintiffs have not demonstrated that Serrano, as a manager, should have been compensated overtime.  Further, Serrano Plaintiffs have essentially conceded claims regarding VIFLSA claims as to the other employees in this case.  (*See* Pl.'s Opp. 1 n.1.)  As such, the VIFLSA claims will be dismissed.

IV.   **CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. Summary judgment is **GRANTED** with respect to claims regarding breach of contract, violation of the implied covenant of good faith and fair dealing, defamation per

se, negligent misrepresentation, intentional infliction of emotional distress, and VIFLSA, and **DENIED** with respect to the claims of wrongful termination under the WDA.  As a result, the following Plaintiffs will no longer be in this case for the affirmative claims they filed: Martinez,[18] Serrano, and Carty.  An appropriate order follows.

s/ Susan D. Wigenton, U.S.D.J.

cc:     Ruth Miller, U.S.M.J.
        Parties

---

[18] Martinez would remain in the case with respect to the counterclaims filed against him as no application was made to dismiss those claims by Plaintiff Martinez.